MOORE *v.* HERMAN GUY AUTO PARTS, INC., et al.

No. 40378          February 4, 1957          92 So. 2d 373

*J. M. Travis,* Heidelberg, for appellant.

*Snow & Covington,* Meridian, for appellee.

Lee, J.

This is a suit by S. E. Moore against Herman Guy Auto Parts, Inc., and another to recover damages for personal injuries. There was a jury verdict for the defendant; and from the judgment entered, Moore appealed.

The basic issue, under the pleadings and the evidence, was whether the automobile, in which Moore was riding, had the right of way in the intersection, or whether the automobile of Guy, approaching on a through highway, was so close to the intersection as to constitute an immediate hazard and thus denied Moore's right, under Section 8197, Code of 1942, to entry at that time.

The lawsuit was the outgrowth of a collision between two automobiles in the intersection of the Vossburg-Eucutta Road and U. S. Highway No. 11. At this point the highway runs in a general north and south course and the road follows an east and west course. The Pontiac automobile, driven by its owner, W. P. Howell, and in which Moore was riding as a guest, traveling east on the road, approached the intersection. At the time of the collision, Herman Guy, agent of the corporate-defendant, driving a Mercury station wagon, was proceeding south on the highway.

Both Howell and Moore testified that, as they approached the highway, they stopped at the stop sign about 10 or 12 feet west of the highway. They looked to the north up No. 11 to the crest of the hill, and it was clear. They then looked south down No. 11, and it was clear except for two freight trucks, which were just in sight. Howell remarked that the road was clear both ways, and Moore sanctioned the statement with the comment "you have got plenty time to cross". Howell then started slowly into and across the intersection. When he had covered two-thirds to three-fourths of the distance, suddenly the Mercury's right front bumper hit the Pontiac's left rear wheel, just east of the center line of the highway, thereby causing Moore's injury. During cross examination, Moore said he knew that Guy "had to be running around 70 miles an hour". A highway patrolman testified that it is 1056 feet from the center of the intersection north to the crest of the hill on No. 11.

Guy and his companion, A. H. Hall, testified that they approached the intersection at a speed of about 35 miles an hour. Hall said that, when they were within 150 feet of it, he saw the Pontiac car stop at the stop sign. A highway truck, which had stopped on the side, then obscured the Pontiac from view. He next saw the car going into the highway in front of them when they were abreast of the truck and only about 30 feet from the intersection. Guy said that he did not see the car, as they were going down the hill, because it was behind the truck; and that when he got about even with the truck, the Pontiac shot out in front of him only 25 or 30 feet away. He said that he could not cut to the right because he would have hit the truck; and that he applied his brakes and did every thing that he could to avoid the collision. He further testified that he was in his own lane at the time of the impact.

Thus according to the evidence for the plaintiff, Howell, before entering the intersection, stopped his car, as contemplated by Section 8197, Code of 1942. When the way appeared to be clear, he undertook to pass over and was struck after he had covered two-thirds to three-fourths of the distance. If this evidence was true, it would be logically inferred that the Mercury was running so fast that it came over the crest of the hill and arrived at the intersection before the plaintiff could look south, start up his car, and make the crossing.

While, under the defendants' version, it was admitted that the Pontiac stopped at the sign, it was said that the driver started up and suddenly entered the intersection only 25 or 30 feet in front of them at a time when they could do nothing to avoid the collision.

██ █ In spite of this sharply disputed issue of fact, the court gave the defendants the following instruction: "The court instructs the jury for the defendant that Mr. Howell, the driver of the car in which the plaintiff was riding, was guilty of negligence in driving his car into

the intersection of the Vossburg-Eucutta road and Highway Number 11 without looking to his left or towards the north immediately before doing so; and if you believe from the evidence that such negligence was the sole proximate cause of the collision and the injuries to the plaintiff, you shall find for the defendants straightout.''

In other words, the court thus told the jury that Howell did not look to the north immediately before entering the intersection, and that this was negligence. The instruction ignored the evidence of both Howell and Moore who testified that they looked first to the north and then to the south and that the way was clear when they started into the intersection.

Appellees cite Ulmer v. Pistole, 115 Miss. 485, 76 So. 522, and Robinson v. Colotta, 199 Miss. 800, 26 So. 2d 66, as authority for giving this instruction. But in the first case, the appellant there was looking only to his right and not to his left, from the direction that the buggy came. The Court said that his failure to look in both directions was negligence. But in the case now before this Court both Howell and Moore, if the jury believed their evidence, looked in both directions. In the latter cited case, the Court refused to give an instruction to the effect that the driver of the truck was negligent in cutting the intersection of Nelson and Hinds Streets and in failing to be on the lookout in entering the intersection. This refusal was held to be error because *the driver admitted that he cut the corner,* and he was therefore on the wrong side of the middle of the intersection. The instruction in the present case was erroneous and should not have been given.

■■ The appellant also complains that the court erred in refusing to give two instructions requested by him. The first undertook to announce the duty of Guy to turn to his right and avoid the collision; and the other, to proclaim his liability, if the collision occurred east of the center line of the highway. There was some evi-

dence for the plaintiff to justify the announcement of these principles. But of course the instructions had to do so correctly. The vice of the first instruction was that it stated peremptorily that there was ample room to pass—"there being ample room on the said highway for this to have been done". Both Guy and Hall had testified that there was not enough room and that they would have run into the highway truck, if they had cut to the right. ██ ██ The other instruction was ineptly drawn and besides peremptorily charged that Guy's driving on the left side (which was denied) proximately caused the injury to the plaintiff. For the reasons stated, these instructions were properly refused.

Appellant complains too of errors in several other instructions which were given for the defendants. An examination of these instructions fails to disclose any substantial error therein.

For the error of the court in giving the above quoted instruction, the cause is reversed and remanded for a new trial.

Reversed and remanded.

*Roberds, P. J.,* and *Hall, Holmes* and *Ethridge,* JJ., concur.