195 So.2d 87 (1967)
Earnestine CAMPBELL
v.
Mrs. Edward J. SCHMIDT.
No. 44232.
Supreme Court of Mississippi.
January 30, 1967.
Suggestion of Error Overruled February 27, 1967.
Allen & Patterson, Brookhaven, Daniel, Coker & Horton, Jackson, Charles H. Herring, Meadville, for appellant.
L.L. Forman, Meadville, Henley, Jones & Henley, Hazlehurst, for appellee.
RODGERS, Justice:
This is a suit brought under Mississippi Code Annotated section 1453 (1956) for the *88 alleged wrongful death of Richard Campbell growing out of an automobile accident. The appellant, Earnestine Campbell, obtained a judgment in the Circuit Court of Franklin County, Mississippi, in the sum of $4,500. She has appealed to this Court and contends that the award allowed by the jury verdict is so grossly inadequate as to evince passion and prejudice on the part of the jury and that her motion for a new trial should have been sustained. Appellant complains that the defendant in the trial court was permitted to show, over the objection of the plaintiff, that she had remarried since the death of her husband, Richard Campbell.
The defendant, Mrs. Edward J. Schmidt, has prosecuted a cross-appeal, and has enumerated seven alleged errors said to have occurred in the trial court. She charges primarily that the court erred in granting certain instructions to the jury on behalf of the plaintiff, one of which was a directed verdict in favor of plaintiff.
The record shows that on July 19, 1962, the automobile collision here involved occurred at the intersection of Monroe Road, a local paved road, and U.S. Highway 84. This intersection is approximately two miles east of Bude, Mississippi. U.S. Highway 84 runs in an easterly and westerly direction at this point, and the Monroe Road intersects the highway at a right angle, running north and south. The testimony shows that the appellee, Mrs. Schmidt, was driving a 1960 Dodge sedan, going south, and that she drove to within a car's length of the stop sign on the north side of U.S. Highway 84. The stop sign is forty to fifty feet from the paved portion of the highway, and the highway is eighteen feet wide at the intersection. Mrs. Schmidt looked to the right (west) and to her left (east) and did not see any traffic approaching from the west. She "stayed there quite awhile" before proceeding upon the highway, but she did not look again to her right (west) before going on the highway. She did not see the other motor vehicle involved in the accident until, as she said, "when he hit me." At that time Richard Campbell was riding in the 1962 three-quarter ton Ford pickup truck belonging to, and driven by, Carlos Watts. Richard Campbell was sitting in the bed of the truck with his back to the cab. Carlos Watts was driving at a speed of forty-five to fifty miles per hour. When Mr. Watts reached a point a short distance west of the intersection, he saw the defendant approaching the highway on the Monroe road "between a hundred and a hundred and fifty feet back up there" at a speed of "twenty to twenty-five miles an hour." Mr. Watts testified that: "She just pulled right across the highway and hit me. I seen she was coming into the highway and I didn't know she wasn't going to stop until I got out in front of her and it was too late for me to do anything." Mr. Watts testified that he did not know whether or not he put on his brakes and said: "If I did, I didn't leave no skid marks."
James Thomas, another witness for the plaintiff, testified that he was riding in the cab of the truck driven by Mr. Watts and that he thought the truck was traveling about "forty to forty-five miles an hour." He saw the Dodge automobile as far back as a house located on the Monroe road, and said: "(W)hen I seed it, it kept moving to the intersection and didn't stop." Many photographs were introduced in evidence and have been included in the record on appeal. These photographs are very helpful to this Court. They show the stop sign and the various distances mentioned by the witnesses.
At the conclusion of the evidence introduced by the parties, the defendant made several motions, one of which requested the court to find for the defendant under one of the counts in the declaration. The trial judge sustained this motion, and there is no contention that the judgment of the trial judge was in error as to this decision. Thereupon, the plaintiff offered the trial judge a written instruction telling the jury to find that the defendant was guilty of negligence as a matter of law and that such negligence was a proximate cause of the *89 injury and death of the deceased, and that it was the duty of the jury to return a verdict in favor of the plaintiff.
The appellee-defendant complains that this instruction should not have been given, because, it is said, Mr. Watts, the driver of the truck in which the deceased was riding, was negligent, and it was a question for the jury to determine whether or not his negligence was the sole cause of the accident in which deceased lost his life.
We are of the opinion that the appellee, cross-appellant, is mistaken in this contention because it is obvious from the record that, not only was negligence shown by the overwhelming testimony of the witnesses, but also from the admission of the defendant, Mrs. Schmidt, that she was negligent, and that her negligence was a direct and proximate cause of the accident.
Mississippi Code Annotated section 8197 (1956) requires that the driver of a motor vehicle must stop at intersections where stop signs are erected, "and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed."
In Wells v. Bennett, 229 Miss. 135, 138, 90 So.2d 199, 200 (1956), we quoted from Avent v. Tucker, 188 Miss. 207, 194 So. 596 (1940) that:
"It seems to be the idea of the writers of the briefs filed on behalf of the appellant in this case that the driver of an automobile having stopped at the intersection at the stop sign  here 49 feet from the intersection  has discharged his full duty to himself from suicide and to the traveling public on a through highway. We want to emphatically state that no opinion of this court has ever absolved the driver of a motor vehicle from exercising care and diligence when proceeding upon a crossing which is much traveled, and at which people are known to travel at a high rate of speed, and if there were no statute in force in this state, common sense would dictate that no driver of an automobile should enter upon an intersection of a much-traveled highway without first ascertaining before it is too late as to the safety of the venture."
See: Bush Const. Co. v. Walters, 250 Miss. 384, 164 So.2d 900 (1964); 254 Miss. 266, 179 So.2d 188 (1965); Junakin v. Kuykendall, 237 Miss. 255, 114 So.2d 661 (1959); Stewart v. Madden, 233 Miss. 206, 101 So.2d 353 (1958); Trewolla v. Garrett, 200 Miss. 563, 27 So.2d 887 (1946).
We do not believe that the case of Moore v. Herman Guy Auto Parts, 230 Miss. 189, 92 So.2d 373 (1957), cited by the defendant, is authority here, because, although the testimony in that case showed that the defendant stopped and then drove upon the highway, after looking in both directions, the facts in the instant case show that the defendant and cross-appellant not only stayed some little time at the place where she stopped, a considerable distance from the highway, but that after having remained there some time, she drove on the highway without looking toward the west. It is apparent that if the defendant, cross-appellant, had looked to the west, she would have seen the truck approaching the intersection for some distance. She is of course charged with seeing that which she should have seen. Layton v. Cook, 248 Miss. 690, 160 So.2d 685 (1964). But, more than that, under the facts here shown, the failure to look was negligence as a matter of law.
We are of the opinion that  although it may have been true that the driver of the truck, in which the deceased was riding as a passenger, was also negligent (of which we express no opinion)  since the defendant, cross-appellant, was also negligent as a matter of law, the court was correct in directing a verdict in favor of the plaintiff, appellant here. Joint tort-feasors are jointly and severally liable, and may be proceeded against, either singly or jointly, individually or in combination. Junkins v. Brown, 238 Miss. 142, 117 So.2d 712 (1960); *90 Granquist v. Crystal Springs Lbr. Co., 190 Miss. 572, 1 So.2d 216 (1941); Westerfield v. Shell Pet. Corp., 161 Miss. 833, 138 So. 561 (1932).
We now reach the question as to whether or not the amount of the jury's verdict was so inadequate as to evince prejudice or passion. Every case on this issue must be determined from the facts in that particular case. After carefully considering the testimony in the instant case, we are of the opinion that the verdict was so inadequate as to require a reversal for a new trial on damages alone.
The testimony shows that the deceased was, during his lifetime, a healthy, strong operator of a caterpillar tractor. He was skilled, and had worked for Mr. Watts for six or seven years. He had earned an average wage of between $55 and $60 per week. He was a good husband. He supported his wife and family. His wife's daughter of a former marriage lived with them. His wife was pregnant at the time of his death, and his child was born afterward. He had a life expectancy of 40.34 additional years. It is apparent that there was a miscarriage of justice in this case and another jury should assess damages to be awarded to the wife and child of the deceased Richard Campbell. A new trial is granted in this case.
Since this case must be retried, we feel that it is necessary to point out that the testimony showing any change in the conditions on which the suit is based is competent as against the rights of the person or persons affected; therefore, we hold that testimony may be introduced to show the remarriage of the widow, after the death of the husband, for which the suit is brought. Berner v. British Commonwealth Pac. Airlines, 230 F. Supp. 240 (S.D.N.Y. 1964); Rogow v. United States, 173 F. Supp. 547 (S.D.N.Y. 1959); Jensen v. Heritage Mut. Ins. Co., 23 Wis.2d 344, 127 N.W.2d 228 (1964); 22 Am.Jur.2d Death § 260 (1965); 25A C.J.S. Death § 101b(4) (1966).
The judgment in favor of the appellant-plaintiff for the use and benefit of the appellant and child of the deceased, and against the defendant and cross-appellant is hereby affirmed, and the case is remanded for a new trial as to damages only.
Affirmed and remanded for damages only.
GILLESPIE, P.J., and BRADY, ROBERTSON and SMITH, JJ., concur.