467 So.2d 924 (1985)
James R. MILLS and Shirley Mills
v.
Hugh NICHOLS, d/b/a Hugh Nichols Trucking Company.
No. 54672.
Supreme Court of Mississippi.
April 10, 1985.
*926 John Booth Farese, Farese, Farese & Farese, Ashland, for appellants.
William C. Murphree, Mitchell, McNutt, Bush, Lagrone & Sams, Tupelo, for appellee.
Before ROY NOBLE LEE, P.J., and SULLIVAN and ANDERSON, JJ.
SULLIVAN, Justice, for the Court:

I.
This is an appeal from a jury verdict awarding Hugh Nichols, d/b/a Hugh Nichols Trucking Company, $1,000, and finding no liability to James and Shirley Mills for injuries and damages resulting from an April 7, 1979, collision between James Mills' car and a Nichols tractor-trailer driven by employee L.Q. Cooksley. On appeal, the Mills contend that the trial court erred in:
1. Not declaring the truck driver an adverse witness;
2. Refusing to grant instruction P-2-(e) (concerning change of lane); granting instructions D-2 (concerning effect of intoxicating liquor), and instruction D-7-(a) (concerning right of way at intersection);
3. Excluding portions of the plaintiff's motion picture;
4. Overruling the Mills' motion in limine concerning the affirmative defenses raised by Nichols;
(5) Failing to exclude hearsay testimony; and
(6) Failing to grant a new trial on the inadequacy of the verdict.
We affirm for the reasons set forth below.
This litigation arose from an accident occuring between 3:00 and 4:00 a.m. on April 7, 1979, in the westbound lanes of highway 72 just outside the city limits of Corinth, Mississippi. L.Q. Cooksley, driving a Nichols' tractor-trailer dump truck, turned onto the northbound highway 45 exit ramp in order to turn west onto highway 72. This required Cooksley to stop at the stop sign where the exit ramp first intersects highway 72; cross the eastbound two lanes of highway 72 so as to reach the median area of highway 72; pause in the center median area; and turn left into the righthand (northernmost) of the two westbound lanes of highway 72.
James Mills was traveling westbound on highway 72, leaving Corinth. About 1/10th of a mile east of the highway 45-72 intersection is the crest of a hill. The hill crest was the first point at which Cooksley could see oncoming cars and Mills could see the intersection. Mills came over the top of the hill in the lefthand lane with his companion Wade Robinson following in the righthand lane. When Mills saw that the collision was imminent, he braked, leaving skidmarks in the lefthand lane 45 feet to the point of impact. Mills' vehicle struck the left rear portion of Nichols' trailer.
The Mills filed this civil action on October 15, 1979, in the Circuit Court of Alcorn *927 County, seeking one million dollars damages for personal injuries to James Mills, and loss of consortium by Shirley Mills. The complaint named Hugh Nichols, d/b/a Hugh Nichols Trucking Company, as the defendant and charged the driver with negligence in several respects. There was no question that Cooksley was employed by Nichols Trucking Company and was acting within the scope of his employment at the time of the accident. Nichols denied the charges of negligence and asserted its own charges of negligence against Mills, and counterclaimed for $5,000 property damage to its truck.
Trial resulted in a verdict for defendant in the amount of $1,000. The jury apparently adopted Nichols' theory that, at the time of the accident, Mills was not keeping a proper lookout and was probably speeding. Mills' motion for judgment notwithstanding the verdict and alternatively for a new trial was overruled.

II.
Mills called Cooksley to the witness stand in his case in chief and, after preliminary questioning, requested the trial court to declare Cooksley an adverse witness, to which defense counsel objected. The court sustained the objection and Mills, nevertheless, continued to examine Cooksley as a witness for the plaintiff. On appeal, the Mills contend that the trial court erred in not declaring this witness, an employee and sole eyewitness for the defense, to be an adverse witness.
Appellants can find no comfort from Mississippi Rule of Civil Procedure 43(b)(3), which provides:
Leading Questions. Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordinarily, leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse witness, or a witness identified with an adverse party, interrogation may be by leading question.
We held in Harris v. Buxton T.V., Inc., 460 So.2d 828 (Miss. 1984), that where a witness' acts or omissions are the predicate for a party's claim or defense, and a defendant is subject to potential liability because of the actions or omissions of the witness in question, then that witness is ordinarily sufficiently identified with an adverse party and may be called as an adverse witness and interrogated by leading questions. Id. at 833. This rule, as will be seen, constitutes a departure from our case law concerning who may be called as an adverse witness. Id. at 833. However, the Mississippi Rules of Civil Procedure, including the rule in question, apply only to those actions filed on or after January 1, 1982. Since this action was filed in 1979, prior to the effective date of the rules, the case is governed by the pre-rules case law concerning adverse witnesses. See Litten v. Grenada County, 437 So.2d 387 (Miss. 1983).
Mills cites Winter v. Nash, 245 Miss. 246, 147 So.2d 507 (1962), for the premise that Mississippi Code Annotated § 13-1-53 (1972), providing that a party opponent may be called as an adverse witness, does not limit the inherent power of a court in regard to the manner in which witnesses may be examined in its search for the truth. Nash affirmed a trial court's ruling allowed the manager of the defendant's business to be called as an adverse witness on the ground that the manager was the alter ego as far as the operation of the defendant's business in question. We ruled that the chancellor had considerable discretion in the matter, and committed no abuse of discretion. 245 Miss. at 258, 147 So.2d at 511.
Nichols points out that resolution of the issue under the pre-rules law focuses attention on whether the witness holds an executive or managerial capacity with a corporation that is a party opponent in the lawsuit. Wagley v. Colonial Baking Co., 208 Miss. 815, 45 So.2d 717 (1950); Smith v. Federal Crop Insurance Corp., 214 Miss. 55, 58 So.2d 95 (1952). In Smith, we upheld the trial court's refusal to permit a *928 mere employee of a party opponent to be examined as an adverse witness under § 13-1-53. We pointed out that he was not an executive officer of the corporation so he was not an opposite party. Moreover, the record showed that the employee was not hostile or evasive in answering the questions. 214 Miss. at 64, 58 So.2d at 95. The pre-rule law plainly requires that the witness occupy an executive position within the opposing party corporation in order to qualify as an adverse witness. The trial court was not in error in refusing to declare Cooksley an adverse witness, since his position as a truck driver was clearly not executive. Moreover, Mills' decision to examine Cooksley on direct following the trial court's adverse ruling was a tactical decision that was not necessary, since Mills could have waited to cross-examine Cooksley when Nichols called him as a defendant's witness.

III.
Mills first objects to instruction D-2 which states:
The Court instructs the jury it is negligence for a person to drive under the influence of intoxicating liquors.
The court instructs the jury that it is for you to determine whether James Mills was under the influence of intoxicating liquor in any degree, however slight, and if he was whether the intoxication contributed to the accident.
If you believe that such intoxication, if any, was the sole proximate cause of the accident or combined with any other negligence, if any, on the part of James Mills to be the sole, proximate cause of the accident, then you shall return a verdict for the defendant Hugh Nichols.
Mills points out that none of the occurrence witnesses, including investigating officers, smelled liquor on either Mills or Robinson's breath. Likewise, no liquor or beer bottles were in Mills' car after the accident. Mills contends that, even though he admitted to drinking four 7-oz. "Pony" beers between 7:00 and 11:00 p.m., their effect had long since worn off so that there was no evidence whatsoever that he was under any influence of intoxicating liquor at the time of the accident.
Nichols cites Allen v. Blanks, 384 So.2d 63, (Miss. 1980), in which this Court, in considering the propriety of a similar instruction, stated:
It is a fact capable of judicial notice that consumption of even small quantities of alcohol may significantly, albeit "imperceptibly", impair reaction time. Where split seconds are critical, even a very slight impairment of reaction time may spell the difference between accident or no accident, between proximately contributing negligence or the lack of it.
In considering Blanks' argument that the instruction on intoxication was properly refused, we note that the only consequence of giving the instruction is to call the jury's attention to the relevant evidence as to whether the driver was intoxicated and further as to whether the intoxication, if any, proximately contributed to the accident. An instruction of the kind offered by Allen does not, as Blanks suggests, bind the jury to a finding of negligence. It simply indicates the legal effect of findings of intoxication and proximate cause, leaving entirely to the jury the factual question of whether such intoxication and proximate cause appears from the evidence presented.
Id. at 67.
In Allen v. Blanks, the evidence upon which this Court found it proper to submit a jury instruction included four occurrence witnesses who stated that Blanks smelled of alcohol. Also a partially consumed gallon jug of wine in the car was found. Id. at 67.
Nichols contends that plaintiff's admitted consumption of alcohol several hours prior to the accident constitutes adequate evidence to submit the question of intoxication to the jury under the crieteria in Allen v. Blanks, supra.
We recognized in Allen v. Blanks that one need not be legally intoxicated in order for the question of impairment of *929 reaction time by intoxicating liquors to be properly submitted to the jury. In the case sub judice, the plaintiff's own admission that he had consumed several beers in the hours preceding the accident formed a sufficient evidentiary basis for submitting the question to the jury in this case, notwithstanding the absence of alcohol on his breath, and liquor bottles in his car.
The Mills next complain that the trial court improperly granted instruction D-7-(a), which reads:
The law instructs the jury that the law required James Mills to reduce his speed from the maximum speed limit of 55 miles an hour as he approached the intersection. If you believe from a preponderance of the evidence that James Mills did not reduce his speed as required by law, he was negligent. If you believe that this negligence, if any, was the sole proximate cause of the collision, or if you believe that this negligence, if any, combined with other negligence, if any, of James Mills to be the sole proximate cause of the collision, then you must return a verdict for Hugh Nichols on both the plaintiff's claim and the defendant's counterclaim.
Mills contends that this instruction was improper in that it failed to instruct the jury to consider the comparative negligence of the parties. Mills cites Tant v. Fairchild, 228 Miss. 126, 87 So.2d 78, 79 (1956), in which this Court held that a jury instruction placing the burden on the plaintiff to prove that the defendant's negligence was the sole proximate cause of her injuries was error in that it failed to incorporate the rules allowing recovery despite contributory negligence by the plaintiff.
Nichols points out that several of the instructions submitted to the jury explain that the relative negligence of the parties is to be weighed and damages awarded accordingly. One of the plaintiff's instruction speaks in terms of sole proximate cause or proximate contributing cause. The instruction giving the jury the formula for determining damages contains a lengthy explanation of calculating comparative negligence. Finally, Nichols' instructions, including the one in question, direct the jury to first determine whether Mills was guilty of negligence and then determine if such negligence, if any, was the sole proximate cause of the accident.
When all of the instructions are considered together, it is clear the jury was properly instructed to consider the comparative negligence of the parties. The language to which Mills objects involves a bifurcated inquiry which leaves the jury the option to consider that Mills' negligence, if any, was not the sole proximate cause of the accident. Tant v. Fairchild is distinguishable on this point.
Finally, the Mills complain that the trial court improperly refused instruction P-2-(e), which reads:
If you find from a preponderance of the evidence in this case that L.Q. Cooksley, while operating a motor vehicle, failed to operate his vehicle entirely within a single lane of U.S. highway 72 or moved from such lane without first ascertaining that such movement could be made with safety, and that L.Q. Cooksley's failure to comply with this regulation was the sole proximate cause or proximate contributing cause of the plaintiff's injuries, then your verdict shall be for the plaintiffs.
This instruction is drawn from Mississippi Code Annotated § 63-3-603. The trial court refused to grant this instruction on the basis that the change of lane statute did not apply to the facts in the case. Mills argues that it did apply since the proof was uncontradicted that the truck was blocking both westbound lanes at the time of the accident and that § 63-3-603 requires a vehicle to be driven as nearly as practical entirely within a single lane and not to be moved from such lane until the driver has first ascertained that such movement can be made with safety. It is clear that a violation of § 63-3-603, when neither explained nor excused, is negligence as a matter of law. Nobles v. Unruh, 198 So.2d 245 (Miss. 1967).
*930 Nichols correctly points out that the decisions construing this statute establish that it sets forth a rule concerning a driver changing lanes either to pass a vehicle or moving from one lane to another. Ward v. Valley Steel Products Co., 339 So.2d 1361 (Miss. 1976), involved a head-on collision between one 18-wheeler passing two others and an on-coming car driving the wrong way down a four-way highway. Likewise, Jackson v. Sullivan, 349 So.2d 527 (Miss. 1977), involved a case where the plaintiff was injured when she changed lanes to pass a vehicle. Although Cooksley had come through an intersection and crossed from the left to righthand lane, Nichols argues that § 63-3-603 does not apply to the facts of this case. Instead, Nichols argues that the jury was properly instructed on the applicable law in instruction D-5 based upon Mississippi Code Annotated § 63-3-805 (1972), which concerns preempting the right of way at an intersection.
The jury instruction proposed by the Mills does not fit the facts of this case nor state the appropriate rule of law governing the situation, since this accident did not arise in the context of one vehicle passing another. The core issue in this case was whether Mills was so close to the intersection as to constitute an immediate hazard of collision. If so, Mills had the right of way and Cooksley was negligent in pulling into the intersection. If not, Cooksley was entitled to proceed, as he did, and Mills was negligent. This issue was properly presented to the jury in instruction D 5. We find no error in the refusal of the plaintiff's instruction concerning change of lanes. See Byrd v. F-S Prestress, Inc., and Steve Smith, Jr., 464 So.2d 63 (1985).
In summary, we conclude that none of the Mills' assignments of error relating to jury instructions require reversal of this case, and we affirm the trial court in all respects on these issues.

IV.
We consolidate for consideration together the remainder of appellants' assignments of error which do not require extensive discussion.
The Mills argue that the trial court improperly excluded from the jury's consideration portions of a motion picture showing the view from the plaintiff's automobile of the intersection approaching the highway and showing a vehicle similar to the defendant's truck running the stop sign at the intersection.
In Jesco, Inc. v. Shannon, 451 So.2d 694 (Miss. 1984), we discussed the standard of review of a trial court's decision to admit or exclude motion pictures. We said:
Motion pictures are admissible into evidence in Mississippi. Barham v. Nowell, 243 Miss. 441, 138 So.2d 493 (1962); Metropolitan Life Ins. Co. v. Wright, 190 Miss. 53, 199 So. 289 (1940).
The introduction of photographs and motion pictures is a matter for the sound discretion of the trial court and that court is afforded wide latitude in exercising this discretion. Niles v. Sanders, 218 So.2d 428 (Miss. 1969); Marr v. Nichols, 208 So.2d 770 (Miss. 1968). See also, Butler v. Chrestman, 264 So.2d 812 (Miss. 1972).
In Butler, an 8 MM movie film which "depicted an agonizing period during (the plaintiff's) recovery" was viewed by the jury as evidence of her pain and suffering. The Court reversed and remanded the case, holding that:
Where the only purpose of photographs is to influence and prejudice the jury they should be excluded, but where they visualize the injury at a stage subsequent to the accident, they may not be excluded solely because they may contain emotional overtones. Jensen v. South Adams County Water and Sanitation District, 149 Colo. 102, 368 P.2d 209 (1962), and Godvig v. Lopez, 185 Ore. 301, 202 P.2d 935 (1949). (Id. at 816).
Caution again is stated to trial judges to preview such evidence to determine its *931 probative value as against its prejudicial effects upon a jury.
Id. at 702.
The trial judge soundly exercised its discretion in admitting only that portion of the film showing the pickup truck stopping before going through the intersection. In the absence of any evidence that the truck ran the stop sign, the prejudicial effect of the Mills' film showing a truck similar to Nichols' running the stop sign is outweighed by any probative value as to the ability of such a truck to accelerate from a dead stop.
Mills complains that the trial court erred in not excluding testimony by Cooksley regarding a C.B. message. Counsel for Mills was questioning Cooksley about how fast the truck could accelerate from a dead stop. Cooksley's response came in a narrative form, and included the statement that he heard someone on a C.B. radio say "Here comes a crazy maniac without any headlights." Mills argues that the trial court should have excluded this testimony on its own motion. Nichols points out that no objection, timely or otherwise, was made during the taking of testimony. The well-recognized rule is that a trial court will not be put in error on appeal for a matter not presented to it for decision. Natural Father v. United Methodist Children's Home, 418 So.2d 807 (Miss. 1982); Mabry v. Winding, 229 Miss. 88, 90 So.2d 175 (1956). Nichols points out that the contemporaneous objection rule applies in this case and that, even if the court considered the merits of the hearsay claim, it would still have been inadmissible as an out-of-court utterance offered to show its effect on the listener (why he knew he stopped), rather than to prove the truth of the utterance. The Mills failed to properly preserve this error for appeal, since no contemporaneous objection was lodged.
The Mills complain that the trial court should have sustained their motion in limine concerning certain affirmative defenses raised by the defendants. His basis was that, during pretrial discovery, no evidence was adduced to substantiate the affirmative defenses. Neither side cited the appropriate authority to support their proposition regarding the propriety of granting a motion in limine under these circumstances. The general rule in this state indicates a preference for overruling pretrial motions aimed at excluding whole blocks of evidence when more specific objections could be efficiently dealt with at trial. Shaw v. Richardson, 392 So.2d 213, 214 (Miss. 1980); Haver v. Hinson, 385 So.2d 605, 608 (Miss. 1980); McKay v. Jones, 354 So.2d 1095, 1096, 1100 (Miss. 1978). We conclude that the trial court properly allowed the jury to pass upon the factual issues of the affirmative defenses asserted by Nichols, rather than exclude any testimony on those issues at the outset.
Finally, the Mills complain that the trial court should have granted a new trial on the grounds that the verdict was grossly inadequate and contrary to the evidence. The Mills point to the undisputed proof of physical injuries and medical costs sustained in the collision, but proof of damages does not establish liability. The evidence at trial concerning the manner in which the accident occurred was sharply conflicting. Mills contended that Cooksley must have run the stop sign and pulled in front of him at a time when Mills had the right of way at the intersection. Nichols argued that Mills was under the influence of alcohol, driving without headlights, speeding and failing to keep a proper lookout. The physical evidence, skidmarks and damages to the truck, support Mills' contention that the back of the trailer was still in the lefthand lane at the time of the accident. Beyond that, it becomes a swearing contest as to which vehicle had preempted the intersection and which vehicle had the duty to yield. Mills said that Cooksley pulled out at the last minute; Cooksley said that he looked down the road and saw nothing coming. This is a classic jury question of fact.
In Barkley v. Miller Transporters, Inc., 450 So.2d 416 (Miss. 1984), we said:

*932 It is "for the jury to say whether or not under the facts and conditions ... [defendant's] negligence proximately caused the accident and alleged injuries." Mooney v. Lawley, 214 So.2d 679, 680 (Miss. 1968). Conflicts in the evidence are to be resolved by the jury, Jackson v. Griffin, 390 So.2d 287, 289 (Miss. 1980); Powers v. Malley, 302 So.2d 262, 265 (Miss. 1974), and the verdict of the jury based upon conflicting evidence "will not be set aside unless it is contrary to the overwhelming weight of the evidence or it is apparent that the jury was actuated by bias, passion and prejudice." Mooney v. Lawley, supra, at 680. This Court has also recently stated that before we "can interfere with the verdict, testimony must so strongly preponderate that the Court can safely say it was overwhelmingly in favor of the appellant." Jackson v. Griffin, supra, at 289; Powers v. Malley, supra, at 265.
Id. at 419.
Mills argument that the jury's $1,000 award to the defendant on a $5,000 counterclaim must have been based upon a finding that Nichols' driver was 80% contributorily negligent because they only awarded him 20% of his claimed damages, is without merit. Logic demands no such conclusion and the jury could properly have considered the fact that Nichols' damages were unliquidated, or unsubstantiated by documentation, in determining the amount of the award. We cannot say with confidence that the verdict was manifestly against all reasonable probability and did not respond to reason upon the evidence adduced. See Faulkner v. Middleton, 186 Miss. 355, 190 So. 910 (1939). A conflict in the evidence of this sort under the Court's established rule of review does not present a ground for setting aside a jury verdict, where proper instructions were submitted.
The ultimate issue in this case was the relative position and speed of the parties in the moments prior to the collision. Since the evidence offered by the witnesses was sharply conflicting, it was proper for the jury to resolve the conflict.
In conclusion, we affirm the judgment of the lower court on all issues raised by appellant.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and ANDERSON, JJ., concur.